IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LAURIE A. T.,

                         Plaintiff,

             v.                              Civil Action No.
                                             8:21-CV-1071 (TJM/DEP)

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,

                         Defendant.

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF N.E. NY       WILLIAM R. HOLLAND, ESQ.
17 Hodskin Street
P.O. Box 648
Canton, NY 13617

FOR DEFENDANT

SOCIAL SECURITY ADMIN.             LUIS PERE, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

    Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. § 405(g),

to challenge a determination of the Commissioner of Social Security

("Commissioner") finding that she was not disabled at the relevant times and,

accordingly, is ineligible for the disability insurance ("DIB") benefits for which

she has applied.  The matter has been referred to me for the issuance of a

report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern

District of New York Local Rule 72.3.  For the reasons set forth below, I

recommend a finding that the Commissioner's determination resulted from the

application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in September of 1968, and is currently fifty-four years of

age.  She was forty-eight years old on November 30, 2016, the date on which

she alleges her disability began, and forty-nine years of age on November 28,

2017, the date she filed her application for benefits.  Plaintiff stands five feet

and three inches in height, and weighed between approximately one hundred

and seventy-eight and two hundred and twenty-four pounds at the relevant

times.  Plaintiff lives with her husband in a trailer in Winthrop, New York.  Her

father-in-law also resided with them until his death in November of 2019.

Plaintiff reports that she graduated from high school and participated in

special education classes for math and English when she was in school.  She

worked most recently doing janitorial work, and before that as an aide at a

program for mentally handicapped adults.  She reports that she was fired from the janitorial job for too many absences related to her issues with diarrhea, neck pain and migraines, and from the aide position after getting into a verbal altercation with her boss.  Plaintiff has since applied for many jobs, but has not obtained any further employment.

Plaintiff alleges that she suffers from a combination of various physical and mental impairments, including neck pain with migraines, lower back pain, chronic diarrhea with incontinence, chest pain related to a heart issue, and severe depression.  Plaintiff treated for her physical impairments with Dr. Lai Kuang and other sources at the same office, the Adirondack Surgical Group, Canton Potsdam Hospital, and the University of Rochester Medical Center. She treated for her depression and associated mental symptoms primarily with sources at Massena Wellness, including psychiatric mental health nurse practitioner ("NP") Kathy Green.

Plaintiff alleged at the first administrative hearing related to her application for benefits in 2019 that she experiences pain in her back if she walks long distances or sits for too long.  She is very sensitive and has anger issues related to her depression, as well as thoughts of self-harm and a remote history of suicide attempts.  Plaintiff takes medications for her symptoms and reports that she does not experience any side effects from those.  Plaintiff has

reported that she showers once per week, makes basic foods like cereal, sandwiches and ramen noodles, gets her father-in-law breakfast, does laundry, cleans dishes, sweeps, drives, feeds her cats and cleans their litterboxes, shops with her husband, visits her family, and watches television.  Her husband cooks them dinner and does the remaining household chores.

At the second administrative hearing in 2021, plaintiff testified that her neck pain has worsened since the previous hearing, she has been worked up for a heart-related issue, and her chronic diarrhea has escalated such that she now wears diapers all the time because she has to rush to the bathroom three or four times per day and sometimes does not make it in time.  She stated that she does not often feel like showering, but she does laundry, helps with the dishes and cleaning, and scoops her cats' litter boxes.  Plaintiff testified that she loses her temper on occasion because of her mental health issues and is scared to leave her house because she does not want to contract COVID-19.  She reported, however, that she does go camping in a recreational vehicle ("RV").

II.    <u>PROCEDURAL HISTORY</u>

A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act

on November 28, 2017.[1]  In support of her application, she claimed to be

disabled due to severe depression, severe cervical spine issues, low vision, a

hearing impairment in her right ear, high blood pressure, elevated parathyroid

levels, and gastroesophageal reflux disorder ("GERD").

A hearing was conducted on September 12, 2019, by Administrative Law

Judge ("ALJ") Bruce S. Fein, to address plaintiff's application.  Following that

hearing, ALJ Fein issued an unfavorable decision on September 25, 2019.  The

Social Security Appeals Council ("Appeals Council") conducted a review of that

decision and remanded the matter for further consideration on June 17, 2020,

finding that the ALJ should have obtained testimony from a vocational expert

regarding plaintiff's ability to perform available work in the national economy.

ALJ Fein held a second hearing on January 26, 2021, at which he elicited

supplemental testimony from the plaintiff and testimony from a vocational

expert.  On February 2, 2021, ALJ Fein again issued an unfavorable decision.

That opinion became a final determination of the agency on August 4, 2021,

when the Appeals Council denied plaintiff's request for review of the ALJ's

decision.

B.    The ALJ's Decision

In his most recent decision, ALJ Fein applied the familiar, five-step

---

[1]      Plaintiff was insured for benefits under Title II until June 30, 2022.

sequential test for determining disability.  At step one, he found that plaintiff had

not engaged in substantial gainful activity during the relevant period.  The ALJ

next found at step two that plaintiff suffers from medically determinable physical

and mental impairments that impose more than minimal limitations on her ability

to perform basic work functions, including degenerative disc disease of the

cervical spine and a persistent depressive disorder.  The ALJ also found, as

part of his step two finding, that plaintiff's documented impairments of

hypothyroidism, hypertension, hyperlipidemia, diabetes mellitus, hearing loss,

obesity/history of weight loss surgery, migraines, poor vision, cannabis and

alcohol abuse in remission, lumbar back pain, carpal tunnel syndrome,

osteoporosis, gastrointestinal issues, and chest pain are all nonsevere

impairments.

At step three, ALJ Fein examined the governing regulations of the

Commissioner setting forth presumptively disabling conditions (the "Listings"),

*see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's

conditions do not meet or medically equal any of the listed conditions set forth

in the Commissioner's regulations, specifically considering Listings 1.04 and

12.04.

ALJ Fein next surveyed the available record evidence and concluded that

plaintiff retains the residual functional capacity ("RFC") to perform a range of

light work, but with the following additional limitations:

> [she can] frequently engage in all postural activities. She should have ready access to restroom facilities.  The claimant can have occasional interaction with coworkers, supervisors, and the public.  She can work in low stress job[s] defined as only occasional decision-making, changes in work setting, and judgment being required on the job.

ALJ Fein went on to step four and found that plaintiff is unable to perform her past relevant work.  Proceeding to step five, ALJ Fein elicited testimony from a vocational expert, and, relying on that testimony, concluded that plaintiff remains able to perform available work in the national economy, citing the positions of laundry folder and garment folder, which the vocational expert testified were the only two available positions due to the restroom restriction. Based upon these findings, ALJ Fein concluded that plaintiff was not disabled during the relevant time period.

    C.   <u>This Action</u>

Plaintiff commenced this action on September 29, 2021.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ (1) committed harmful legal error in finding that the opinion from treating NP Kathy

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18.  Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Green is unpersuasive; (2) erred in evaluating whether plaintiff's depressive

disorder meets or equals Listing 12.04; (3) erred in evaluating her subjective

complaints when finding those complaints were not wholly consistent with

record evidence; (4) erred in evaluating plaintiff's RFC related to his findings

regarding the abilities to stand, lift and carry, sit, perform postural activities,

have access to a bathroom, and handle interaction with others or even low-

stress work; and (5) failed to support his step five finding with substantial

evidence because there is no apparent basis for the vocational expert's

testimony regarding numbers for the occupations she identified.  Dkt. No. 10, at

13-21.

Oral argument was conducted in this matter, by telephone, on October

20, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.  *Brault*

*v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v.*

*Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131

(2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record,

examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is

engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies

11

with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

  C. <u>Analysis</u>

    1. <u>Opinion from NP Green</u>

  Plaintiff first argues that the ALJ engaged in an erroneous assessment of the opinion from NP Kathy Green by relying on selective evidence from the record while failing to account for evidence of greater restrictions and by rejecting that opinion on the assumption that it was based on the plaintiff's subjective reports rather than NP Green's own medical expertise. Dkt. No. 10, at 13-15.

  On September 10, 2019, NP Green opined that plaintiff has extreme[3] impairment in the areas of applying information, adapting to the workplace,

---

[3]  "Extreme" is defined in the form as "precludes ability to function."

managing in the workplace and maintaining social functioning, marked[4] impairment in the areas of understanding, remembering and applying information, interacting with others, concentrating and maintaining pace, and moderate impairment in the areas of persisting and performing activities of daily living.  Administrative Transcript ("AT") at 1333.[5]  She further opined that, as to more specific work-related functions, plaintiff has extreme limitations in her abilities to understand, remember and carry out detailed instructions, maintain attention for two hour segments, maintain regular attendance and be punctual, complete a normal workday or workweek without interruption from psychologically based symptoms, perform at a consistent pace without an unreasonable number or length of rest periods, accept instructions and respond appropriately to criticism from supervisors, work with or near others without being unduly distracted, respond appropriately to changes in a routine work setting, deal with normal work stress, set realistic goals or make plans independently of others, deal with the stress of semi-skilled or skilled work, interact appropriately with the general public, maintain socially appropriate behavior, and travel in the an unfamiliar place.  AT 1335.  She opined that

---

[4]    "Marked" is defined in the form as "seriously affects ability to function, with a substantial loss in ability."

[5]    The administrative transcript is found at Dkt. No. 9, and will be referred to throughout this decision as "AT ___."

plaintiff has marked limitations in her abilities to remember work-like procedures, understand and remember one or two-step oral instructions, carry out very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, get along with coworkers without unduly distracting them and be aware of normal hazards and take appropriate precautions, a moderate limitation in her ability to adhere to basic standards of neatness and cleanliness, and no limitation in her ability to ask simple questions and request assistance.  AT 1335.  NP Green also opined that plaintiff is unable to tolerate crowds, continually experiences episodes of deterioration that cause her to withdraw or to experience exacerbation of her symptoms, and is subject to such marginal adjustment that even a minimal increase in mental demands or change in her environment is likely to cause her to decompensate.  AT 1332-34.

ALJ Fein stated that he was "not very persuaded" by NP Green's opinion, finding that "the 'marked' and 'extreme' restrictions she identified are contradicted by the objective evidence [in the] record, including treatment notes from her office."  AT 21.  The ALJ specifically noted, for example, that the treatment record from the same date as the opinion indicated that, although plaintiff appeared down laden, sad, and depressed with slow response and limited insight, she was well groomed, cooperative and relaxed with good eye

contact, an organized thought process, logical and rational thoughts, intact cognitive functioning, concrete abstraction, good judgment, and fair insight.  AT 21; *see* AT 1337-38.  He also specifically pointed to findings from other treatment records, noting that "these clinical findings, as well as the objective evidence discussed below, are at odds with the significant restrictions NP Green identified."  AT 21.  The ALJ further found that "treatment notes from NP Green's office indicated that she completed the assessment with the assistance of the claimant . . . which suggests NP Green relied significantly on the claimant's subjective complaints as opposed to the objective findings of record."  AT 21-22.

Because the application in this case was filed after March 17, 2017, this case is subject to the amended regulations regarding evaluation of opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her

determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[6] and consistency[7] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

I note, as an initial matter, that the ALJ clearly addressed the required factors of consistency and supportability when considering NP Green's opinion, finding it to be both inconsistent with the record evidence as a whole and unsupported by either NP Green's own treatment notes or sufficient

---

[6]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be."  20 C.F.R. § 416.920c(c)(1).

[7]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

explanation.  AT 21-22.  Plaintiff argues, however, that the ALJ did not properly

conduct his assessment of those factors because he relied selectively on

certain evidence while ignoring other evidence that corroborates the greater

restrictions opined by NP Green.  I find plaintiff's arguments to be unpersuasive.

As to the ALJ's assessment of whether NP Green's medical source

statement is consistent with the treatment records as a whole and supported by

NP Green's explanations or records in particular, the ALJ specifically found that

NP Green's opinion is at odds with the content of her own treatment notes that,

while showing some deficits related to mood in particular, overall do not

substantiate marked or extreme limitations of functioning, and is also

inconsistent with the other evidence in the record.  AT 21-22.  Plaintiff argues

that the ALJ erred in relying only a select few treatment notes while ignoring

findings of greater symptoms contained even within those same treatment

notes, but that argument is not accurate.  Firstly, the ALJ explicitly did

acknowledge notations related to plaintiff's "down laden," depressed, and sad

demeanor from the one cited treatment note, contrary to plaintiff's implicit

argument that he ignored those findings.  Further, although the ALJ discussed

only a handful of specific notes as examples, that fact does not undermine his

findings.  As is well-established in this circuit, an ALJ is not required to

specifically discuss every piece of evidence in order to show that it was

17

considered.  *Brault*, 683 F.3d at 448.

Plaintiff also has not pointed to any findings within NP Green's treatment notes that undermine the ALJ's finding.  The records indicate a pattern of waxing and waning symptoms, which generally seem to have been dependent in large part on whether she was having problems with her husband or stress related to the health of her father-in-law and mother.  Although on some occasions she appeared depressed or crying (AT 1077, 1082, 1069, 1079, 1116, 1140-41, 1144, 1337, 1647, 1689, 1703) and even sporadically reported suicidal ideation (AT 1077, 1116, 1127, 1627, 1675, 1695), her mood was often observed to be neutral (AT 765, 769, 1072, 1076, 1105, 1107, 1118, 1136, 1143, 1640, 1687) and on many occasions she was noted to be euthymic and smiling.  AT 1093, 1098, 1100, 1102, 1103, 1138, 1143, 1642, 1657, 1670, 1734, 1738, 1751.  The treatment records document that although plaintiff experienced stress and mood issues in response to family situations, she was gaining the skills needed to cope with them.  AT 1103, 1105, 1703, 1740.  It was also noted particularly in 2020, when plaintiff was going on camping trips or visiting with family fairly frequently, that her mood was generally better when she was on those trips and she enjoyed being around family and the children.  AT 1714, 1718, 1720, 1732, 1749, 1751.  Her mood tended to worsen when she was having difficulties with her husband's abusive behaviors, and therapist

Margaret Dunn noted that plaintiff's depression and dysthymia are "[l]argely environmental as changes during day [are] dependent upon [husband's] mood/behavior."  AT 1703.  Therapist Dunn also later noted that plaintiff's mood appears to improve when she engages in productive activities and socializes with others.  AT 1749.  The records from NP Green's office as a whole, including NP Green's own treatment notes, therefore do show that plaintiff experienced periods of low mood with sporadic suicidal ideation and diminished motivation or energy, but simply do not establish the marked and extreme level of limitation that NP Green generally opined in her medical source statement. Despite plaintiff's citation to her report that she often showers only once every week or two, treatment and examination reports consistently noted that she was observed to be well-groomed with adequate observable hygiene.  *See e.g.*, AT 774, 1098, 1147, 1337.  Consultative examiner Dr. Dante Alexander observed that she appeared only mildly depressed and had only mildly impaired memory due to anxiety, with mildly impaired attention and concentration due not to a cognitive deficit but to limited math abilities.  AT 775.  Dr. Alexander himself opined no more than mild or moderate limitations in any area of functioning.  AT 776.  Because the evidence as a whole simply does not contradict the ALJ's findings regarding the supportability and consistency of NP Green's opinion, I find that the ALJ's finding that her opinion was not persuasive is supported by

substantial evidence

I do acknowledge that there is some question as to whether the ALJ's finding that NP Green's medical source statement was merely a recitation of plaintiff's subjective complaints rather than an actual medical opinion is supported.  Specifically, the ALJ relied on a notation that NP Green completed her medical source statement with plaintiff as evidence that her opinion was largely based on plaintiff's subjective reports.  However, I need not decide whether this interpretation was proper or supported, because his discussion of and citation to the evidence as a whole, including the treatment records of NP Green herself, provides a proper basis for the overall conclusion that NP Green's opinion should not be found persuasive, notwithstanding whether or not it was also based primarily on subjective reports.

Based on the foregoing, I find that the ALJ's assessment of NP Green's opinion is supported by substantial evidence.

### 2.   Evaluation of Listing 12.04

Plaintiff next argues that the ALJ erred in finding that she does not meet or equal Listing 12.04, specifically arguing that the ALJ's failure to properly assess the evidence in the record, including the opinion from NP Green, should have resulted in a finding that she had at least marked limitations in the domains of interacting with others and adapting and managing herself.  Dkt. No.

10, at 15-16.  This argument fails for many of the same reasons that were already discussed above, namely that the evidence in the record does not reasonably support marked or extreme mental limitations.  The ALJ engaged in an appropriate assessment of the record evidence and adequately accounted for the level of restriction supported by that evidence.  Plaintiff's citation to a few out-of-context notations from various treatment records does not undermine the fact that the overall record does not support the extent of limitation plaintiff now argues is present.

### 3.    Evaluation of Subjective Complaints

Plaintiff next argues that the ALJ's analysis of whether her subjective reports are consistent with the other record evidence is flawed because the ALJ (1) ignored evidence that she has "severe" spinal canal stenosis and spurring at the C5-C6 level of her cervical spine which, plaintiff argues, supports that she cannot perform the demands of light work, and (2) erroneously assessed her reported activities of daily living by failing to consider the reported activities in their full context and characterizing those activities as "broad" despite evidence that shows she is more limited.  Dkt. No. 10, at 17-18.

Under the two-step review protocol applicable in social security cases for assessing a claimant's subjective reports of symptoms, an ALJ must first determine whether the individual has a medically determinable impairment that

could reasonably be expected to produce the alleged symptoms, and, if so, the ALJ must then evaluate the intensity and persistence of those symptoms and determine the extent to which those symptoms limit the claimant's ability to perform work-related activities.  Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-8.  When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the claimant and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors.  *Id.*

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence.  *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing

*Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, provided that it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms.  *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision"). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

As to plaintiff's argument regarding the findings from the cervical spine imaging, I find that any failure of the ALJ to specifically mention the cited findings had no effect on his overall conclusions.  The focus of plaintiff's argument is a report of magnetic resonance imaging ("MRI") testing of her cervical spine, conducted on June 21, 2017.  AT 461-62.  The impression portion of the report notes, "severe degenerative disease" and "severe canal stenosis" at the C5-C6 level.  AT 461.  I acknowledge that the ALJ surprisingly does not mention these findings despite discussing other findings within the

same imaging report. AT 22. However, the fact that the imaging showed severe posterior spurring with severe canal stenosis and severe right-sided neural foraminal narrowing does not automatically lead to the conclusion that plaintiff is unable to perform the demands of light work, as the ALJ otherwise found. Of note, despite the existence of such severe findings, examinations of the plaintiff generally did not reveal diminished range of motion in the neck or any symptoms radiating into her shoulders, arms or hands. Although some decreased range of motion was observed in late 2016 and mid-2017, she was otherwise generally noted to have normal cervical range of motion, and observations of tenderness in the neck and shoulder muscles were sporadic. *See e.g.,* AT 495, 644, 665, 926, 1587. Additionally, particularly in 2019 and 2020, plaintiff received treatment in the form of trigger point injections, occipital nerve blocks, nortriptyline, and methocarbamol, which were all noted to help the reported pain and muscle tension symptoms related to her neck. *See e.g.*, AT 1246, 1560, 1575, 1585. Because the evidence as a whole related to plaintiff's cervical spine does not appear to suggest an inability to perform particularly the lifting, carrying, pushing and pulling found within the RFC finding, it does not appear that the ALJ's failure to explicitly consider the presence of severe disease at a certain level of her cervical spine undermines or calls into question the ALJ's ultimate RFC finding. Nor does plaintiff argue how those imaging

findings would have required the ALJ to find that her subjective reports deserved greater credence despite the other evidence.  The ALJ acknowledged that plaintiff reported that injections, physical therapy, and chiropractic care helped to alleviate some of her pain and reported loss of range of motion.  AT 22.  I therefore find that there was no impact on the ALJ's assessment, of plaintiff's subjective reports or otherwise, as a consequence of his failure to specifically mention certain findings contained within the objective imaging of plaintiff's spine.

Plaintiff also challenges the assessment of her subjective reports on the basis that the ALJ improperly characterized her reported activities of daily living as "broad" and overestimating what plaintiff is actually able to do.  However, I find no such error in the ALJ's citation to those activities.  Although plaintiff is correct that the ALJ did not include all of the nuances contained within her reports to the consultative examiners and at the administrative hearing, there is nothing inaccurate in his assessment of those activities.  AT 24.  Contrary to plaintiff's reports of severely restricted functional abilities, the record shows that, during the relevant period, she was a caregiver for her terminally ill father-in-law for a significant amount of time; provided care and assistance to her mother including taking her to appointments and spending five days at her mother's house in May 2020 assisting her with housework; attended church when she

25

able; applied for employment, including traveling to numerous different locations to inquire about employment on a few occasions; went on multiple extended RV camping trips with her husband and family during which she acknowledged she engaged in more activity; swam; attended a county fair; assisted her husband with siding their trailer; and spent time with family on a regular basis even during the COVID pandemic. *See e.g.* AT 772, 1100, 1121, 1123, 1627, 1670, 1675, 1692, 1707, 1712, 1714, 1718, 1720, 1722, 1724, 1730-32, 1749, 1751. Plaintiff reported being able to cook, do laundry, sweep, shop, socialize, watch television, and play cards. AT 52-54, 56, 775-76, 779. Although she did report that she does not maintain her hygiene on a regular basis because she does not shower often, providers consistently noted that she appeared well-groomed on examinations and did not note that any problematic hygiene issues were noticeable. Because the ALJ did not misrepresent plaintiff's reported activities and there is no apparent inaccuracy in his finding that those reported activities are inconsistent with plaintiff's allegations of greater limitations, I find no error in the ALJ's assessment of the plaintiff's subjective reports.

    4.    The ALJ's RFC Findings

Plaintiff additionally argues that the ALJ's RFC finding is not supported by substantial evidence in a number of respects, including in that the ALJ (1) failed to provide a specific finding regarding her ability to sit, (2) erred in finding she

could perform all postural activities frequently because the consultative

examiner observed she could not squat and a treating physician noted that

bending and twisting aggravated her neck pain, (3) erred in finding that she can

lift and carry up to twenty pounds despite the fact that the consultative examiner

found she has a mild-to-moderate limitation in her abilities to lift, carry, push

and pull and her testimony that she was directed not to lift more than ten

pounds following a hospitalization for heart related issues, (4) erred in finding

she can stand or walk for six or more hours per day because plaintiff testified

those abilities are far more limited, (5) failed to include a specific enough finding

regarding need to use a bathroom during the workday because he failed to

specify the frequency and duration of any such bathroom visits, and (6) erred in

finding that plaintiff can have occasional interaction with others and handle a

low-stress job because the evidence and her testimony are at odds with that

conclusion.  Dkt. No. 10, at 18-20.

Plaintiff argues that the ALJ erred in failing to provide a functional

assessment of her ability to sit because he did not specify the amount of time

that plaintiff is capable of that activity.  However, although a functional

assessment is required by the regulations, it is well-established that the failure

to include such an assessment is not always a ground for remand.  *See*

*Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not

automatically required in all cases where the ALJ failed to provide an explicit function-by-function analysis, if the ALJ's analysis otherwise "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous").  I agree with the Commissioner that the ALJ's finding that plaintiff is capable of light work is sufficient in this case because the very definition of light work includes a determination of the duration of sitting required, and because there is no evidence to suggest that plaintiff is limited in her ability to sit in a way that would impact her claim.[8]  *See* SSR 83-10 (noting that a full range of light work generally requires standing or walking for approximately six hours in an eight hour workday, with sitting occurring intermittently during that time).  Although plaintiff reported that her back hurts if she sits for too long at once, there is very little medical evidence in the record to corroborate her reports of back pain.  Because there is no evidence to indicate plaintiff is limited in her ability to sit in a way that would impact her RFC, I find any failure to discuss how the ALJ came to his conclusion regarding the ability to sit is at most harmless error.

---

[8]     Notably, after conducting a physical examination, consultative examiner Dr. Ganesh opined that plaintiff has no gross limitations in sitting, standing, and walking, while state agency medical consultant Dr. Dickerson opined that she can stand and/or walk for about six hours total in an eight-hour workday and sit for about six hours in an eight-hour workday.  AT 99, 780.  These opinions both provide support for the ALJ's RFC finding that plaintiff is able to perform the demands of light work.

*See Cichocki*, 729 F.3d at 177-78 (finding the failure to include an explicit function-by-function analysis of all possible limitation did not warrant remand where the ALJ addressed all the relevant limitations and his conclusions were supported by substantial evidence); *see also Gwenn A. S. v. Kijakazi*, 20-CV-1168, 2022 WL 1129810, at *10 (N.D.N.Y. Feb. 3, 2022) (Peebles, M.J.) (finding remand not required as a result of the ALJ's failure to provide a specific assessment of the plaintiff's ability to sit because "plaintiff has not shown how the record credibly supports that she requires greater limitations related to her ability to sit throughout the workday than are accounted for by the RFC").

As to the ALJ's findings regarding plaintiff's ability to stand and walk, plaintiff relies solely on her own reports that she is significantly limited in her ability to stand or walk at one time.  However, as was already discussed, the ALJ found that plaintiff's subjective reports were generally not consistent with the record evidence as a whole, and indeed they are at sharp odds with the medical source statements in the record, both of which indicate a far greater ability to stand and walk than plaintiff reports.  I also note that the medical evidence of record does not appear to indicate any abnormalities of gait or difficulty walking.  I therefore find that the ALJ's findings on this matter are supported by substantial evidence, including the medical source statements.

As to the ability to lift and carry twenty pounds, I find plaintiff's arguments

unavailing. The consultative examiner's finding that she has a mild-to-moderate limitation in her ability to lift, carry, push and pull is not inconsistent with a restriction to lifting and carrying twenty pounds, and plaintiff cites no authority to suggest otherwise. To the contrary, there is ample case law to support the proposition that moderate limitations in the ability to lift and carry are consistent with performance of light work. *See e.g., April B. v. Saul*, 18-CV-0682, 2019 WL 4736234, at *5 (N.D.N.Y. Sept. 27, 2019) (Stewart, M.J.); *Colon-Sanchez v. Comm'r of Soc. Sec.*, 14-CV-0705, 2016 WL 638816, at *7 (N.D.N.Y. Jan. 25, 2016) (Peebles, M.J.); *see also Lori M. v. Comm'r of Soc. Sec.*, 2020 WL 7382128, at *5 (W.D.N.Y. Dec. 16, 2020) (collecting cases). Further, although plaintiff did testify at the second hearing in 2021 that she was directed not to lift more than ten pounds following a hospitalization for heart-related issues, she offers no evidence to support that testimony. The only documentation of such a restriction in the record is from an "after-visit summary" dated January 2020 related to a cardiac catheterization procedure, which indicates that plaintiff should engage in no lifting, pushing or pulling more than ten pounds for five days after the procedure. AT 1471. The reported restriction therefore was by its very terms not meant to be a permanent limitation on plaintiff's functional abilities. I therefore find nothing in plaintiff's arguments or the record that would undermine the ALJ's limitation for lifting and carrying up to twenty pounds.

Plaintiff's arguments regarding the limitation to frequent postural activities are likewise unavailing.  Although it is true that consultative examiner Dr. Ganesh observed during her examination that plaintiff was unable to squat, she notably did not find any postural limitations were warranted in her medical source statement.  AT 780.  State agency medical consultant Dr. Dickerson opined that plaintiff retains an ability to frequently perform postural activities. AT 99-100.  Plaintiff's citation to a few instances where she was observed to have reduced cervical spine range of motion and tenderness in her neck muscles, and an instance where a physician documented her reports that her neck pain is aggravated by bending and twisting, do not persuasively undermine the ALJ's findings, which are based both on his adequate review of the record and the medical source statements that were provided.  I note in particular, as was discussed previously, that many examinations of the plaintiff revealed no abnormality in the range of motion of her cervical spine, and treatments particularly in 2019 and 2020 helped to alleviate plaintiff's reported neck pain and muscle spasms to a significant degree.  Plaintiff has not shown that the ALJ erred in finding she could perform the relevant postural activities on a frequent basis.

Plaintiff further argues that the RFC is insufficient because the indication that she requires "ready access to a bathroom" does not provide specificity

regarding the frequency and duration of required bathroom visits.  I find that

greater specificity was not required in this case because there is very little

evidence to support the need for even the limitation included by the ALJ in the

RFC.  The ALJ appears to have included this limitation as a means of giving

plaintiff the benefit of the doubt in consideration of her testimony from 2021 that

her chronic diarrhea causes her to use the bathroom three or four times per day

and wear diapers because she sometimes cannot make it to the bathroom in

time, resulting in a need to clean up in the bathroom if that happens.  However,

there is very little medical evidence to support plaintiff's allegations regarding

her digestive issues.  It was noted in February and March 2019 that she

reported two-to-five loose bowel movements per day.  AT 921, 927, 1225.  In

June of 2020, she reported that her typical pattern is three soft urgent stool

events daily.  AT 1526.  I also note that there are a few notations in the record

to the effect that plaintiff experienced some improvement in her diarrhea when

she lessened her intake of soda, although she apparently did not completely

stop drinking soda despite it worsening her symptoms.  AT 1136.  There does

not appear to be any medical documentation to corroborate plaintiff's testimony

that she suffers from incontinence, and no opinion from a medical provider that

documents a need for extensive or time-consuming bathroom breaks.[9]  Further, the ALJ explicitly found, based upon the evidence, that plaintiff's gastrointestinal issues do not constitute a severe impairment, indicating that, although he found ready access to a bathroom to be warranted, he concluded overall that her gastrointestinal issues would not have a significant effect on her work related functioning.[10]  AT 16-17.  Because there is no indication that plaintiff's digestive problems would be so pervasive during her workday as to require extensive breaks as opposed to simply being permitted to use the bathroom when needed

---

[9]     Indeed, the ALJ's inclusion of any bathroom-related limitation is more restrictive than the provided medical source statements, given that none of those sources opined such a limitation. *See Theresa G. v. Saul*, 20-CV-0362, 2021 WL 1535472, at *5 (N.D.N.Y. Apr. 19, 2021) (Stewart, M.J.) ("Given the lack of any medical opinion stating that Plaintiff needed such an accommodation, it would not have been error for the ALJ to omit it from the RFC. The fact that a limitation was included despite its absence from any medical opinion means simply that the RFC was 'more generous' than the medical opinions required and 'where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand.'").

[10]     This case is distinguishable from *Tina M. v. Comm'r of Soc. Sec.*, 19-CV-1481, 2021 WL 1298492 (W.D.N.Y. Apr. 7, 2021), which was cited by plaintiff.  In that case, the ALJ found Crohn's disease to be a severe impairment and the plaintiff's testimony indicated needing to use the bathroom at least ten times per day, with each time lasting a minimum of twenty minutes and sometimes up to an hour.  *Tina M.*, 2021 WL 1298492, at *5-6.  The court concluded that the ALJ's restriction for "ready access to a bathroom" was insufficient because the ALJ did not address whether the total amount of time the plaintiff would need to spend in the bathroom would exceed the time the vocational expert testified plaintiff could be off-task within employer-accepted limits.  *Id.*  In this case, as was discussed, the medical evidence shows a need for approximately three bowel movements per day, and does not corroborate plaintiff's reports of incontinence.  This evidence, along with the ALJ's finding that plaintiff's gastrointestinal impairments are nonsevere and his finding that plaintiff's subjective reports were not wholly consistent with the record evidence, provides the context that was missing in *Tina M.*, as there is no indication that plaintiff's need to use the restroom two-to-five times per day would result in her being off-task in excess of the ten-percent threshold opined by the vocational expert.

two-to-five times per day, I find no error in the ALJ's inclusion of the relevant limitation in this case.[11]  *See Mosinski v. Astrue*, 09-CV-0944, 2011 WL 2580353, at *6 (N.D.N.Y. Mar. 7, 2011) (Bianchini, M.J.) (finding RFC for light work with ready access to a bathroom was sufficiently supported by substantial evidence where the record showed the plaintiff had diarrhea approximately three times a day as a result of his Crohn's disease).

Finally, plaintiff's argument that the ALJ erred in finding she could have occasional interaction with others and could handle low-stress work is not persuasive for many of the reasons already discussed above related to NP Green's opinion and Listing 12.04.  In sum, the mental health evidence simply does not support that plaintiff is unable to occasionally interact with others or handle even low stress work.  I note that the mental health records show both that over time plaintiff has spent a great deal of time with others socializing, with a provider noting that it was clear that her mood was improved by socializing with others, and that plaintiff was developing successful coping strategies to handle the daily stress of her abusive relationship and other life difficulties.  AT 1749.  Plaintiff's citation to a few sporadic out-of-context reports from treatment

---

[11]    I note also that this limitation is itself fairly restrictive, given that the vocational expert testified that inclusion of that limitation specifically narrowed the job base such that the two identified jobs were the only occupations that would be available to plaintiff in the national economy.  AT 77.  The vocational expert's testimony also makes clear that the restriction as posited has a readily understandable meaning in vocational terms.

notes is simply insufficient to convince me that the ALJ's finding regarding socialization and stress are unsupported by substantial evidence.

     5.    <u>The ALJ's Step Five Finding</u>

Plaintiff lastly argues that the ALJ's step five finding is not supported by substantial evidence because (1) the ALJ failed to account for the limitations opined by NP Green in particular in the hypothetical question to the vocational expert, and (2) the vocational expert did not cite to either her experience or a specific method from which she extrapolated the estimated numbers for the jobs she testified plaintiff can perform.  Dkt. No. 10, at 21-22.

Plaintiff's argument that the hypothetical question did not account for all of her supported limitations must be rejected based on my finding, as set forth above, that the ALJ did not commit any errors when assessing the limitations in the RFC, given that the relevant hypothetical question mirrored the eventual RFC finding.  As to plaintiff's second argument, that the vocational expert's testimony regarding job numbers was conjured "out of whole cloth," such assertion is directly contradicted by the transcript of the administrative hearing, in which the vocational expert answered affirmatively when the ALJ stated, "[s]o then I will assume that your testimony will be based upon your knowledge, education, training and experience and is consistent with the Dictionary of Occupational Titles unless you tell me otherwise, allright?"  AT 71.  When

plaintiff's counsel questioned the vocational expert regarding whether or how the COVID pandemic would affect the numbers for the jobs she identified, the vocational expert answered that, although the pandemic has affected everything, it is not certain what the exact numbers of jobs affected would be because the Department of Labor or any other source had not released such statistics yet. AT 79. The vocational expert therefore estimated the amount of jobs available in the two identified occupations based on her experience and the information available to her.

Although the vocational expert did not testify as to what specific job database or other source she relied upon to estimate the job numbers, there is no indication that she simply manufactured those numbers without reliance on her experience or other knowledge. I note in particular that, although plaintiff's counsel had an opportunity to question the vocational expert at the administrative hearing, he did not inquire as to the source of the vocational expert's estimates of job numbers, which is a notable omission as he specifically questioned the vocational expert regarding how those numbers might be affected by the COVID pandemic. *See Crespo v. Comm'r of Soc. Sec.*, 2019 WL 4686763, at *8-9 (D. Conn. Sept. 25, 2019) (finding remand was not appropriate on the basis that the vocational expert had not identified the source of the job numbers she provided where the plaintiff's representative was

offered the opportunity to examine the vocational expert and had not asked her to divulge that source or challenged the vocational expert's credentials or qualifications as an expert) (discussing *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019)).  I therefore find that remand is not warranted on this issue.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 13) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72.

Dated:     November 2, 2022
           Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge